NESBITT, Judge.
These are consolidated appeals emanating from a summary final judgment which: (1) awarded damages to the father and next friend of the minor-plaintiff, Cherise, for expenses incurred for remedial education in a special school for children with learning disabilities; and (2) denied plaintiff attorney’s fees. Finding that there was no coverage afforded, we reverse the judgment entered in favor of the plaintiff and against The Aetna Life Insurance Company (Aetna) which moots the cross-appeal concerning attorney’s fees.
Cherise, while riding a bicycle, accidentally fell and was injured resulting in permanent brain damage which affected her learning ability as well as her speech capacity. A pediatric neurologist and a clinical psychologist recommended a special school geared for remediation of learning disabilities suitable for Cherise’s educational needs. The curriculum was basically the same as taught in regular educational institutions; however, the methodology was geared toward the particular needs of these students.
Aetna, the insuror under a hospitalization plan issued to Cherise’s father while he was employed by Connecticut Mutual Life Insurance Company, refused payment for these expenses. Although there is some confusion, we perceive that Cherise’s father never saw a copy of the master policy or any renewal certificates. Instead, Cherise’s father received a summary of the benefits provided by the policy. Though it is not clear whether that summary was prepared by Connecticut Mutual Life Insurance Company or by Aetna, our disposition of the matter makes that point immaterial. The pertinent portions of the summary which set forth the covered medical expenses are as follows:
MEDICAL EXPENSES. Medical expenses for Participants will include expenses arising from both occupational and non-occupational accidents and diseases. However, Agency Employees’ and any Dependents’ medical expenses will include only those which arise from a non-occupational accident or disease.
Medical expenses included under the plan are the reasonable charges which a Participant is required to pay for the following services and supplies for the treatment of accidents and diseases:
(1) The services of a legally qualified physician.
(2) The services of a registered graduate nurse (R.N.)— ....
(3) The charges of a hospital for board and room and other necessary hospital services and supplies— ....
(4) The charges for the following services and supplies:
(a) Drugs and medicines obtainable only upon the prescription of a legally qualified physician.
(b) Diagnostic X-ray and Laboratory examinations.
(c) X-ray, radium, and radio-active isotopes therapy.
(d) Anesthetics and oxygen.
(e) Rental of iron lung and other durable medical equipment for therapeutic treatment.
(f) Artificial limbs and eyes — but not hearing aids, eye glasses, or routine eye examinations.
(g) Professional ambulance service when used to transport the individual from the place where he is injured by an accident or stricken by a disease to the first hospital where treatment is given — but no other charges for transportation or travel.
(5) Expenses which represent charges made by a home health care agency

(6) Expenses, as listed above, in connection with cosmetic surgery neces *503 sary for the prompt repair of injuries caused by an accident occurring while insured — but no other expenses for cosmetic surgery are included.
(7) Expenses, as listed above, in connection with dental work necessary for the prompt repair of injuries caused by an accident occurring while insured

(8) Expenses, as listed above, in connection with surgical operations for either extra-uterine pregnancy or complications requiring intra-abdominal surgery after termination of pregnancy

(9) Expenses incurred in connection with the treatment of mental or nervous conditions are co-insured at 50% (which includes psychologist’s charges provided the Participant or Dependent is under the supervision and direction of a qualified psychiatrist except in those states where a properly certified psychologist is considered a physician as defined in Part IX under “Definition of a Physician”) unless the Participant or his Dependents are confined as inpatients in a hospital or similar institution in connection with mental or nervous conditions. In that case, qualified claims are covered at 80% during confinement and a period of five years immediately following the termination of any such confinement.'
Based upon the familiar rule that all ambiguities in insurance contracts are to be construed most favorably to the insured and against the insuror, Zautner v. Liberty Mutual Insurance Company, 382 So.2d 106 (Fla. 3d DCA 1980), the trial court found that paragraph (9), quoted above, afforded coverage. While we adhere to that proposition concerning construction of insurance contracts, we do not feel that its application is pertinent to the disposition of this matter.
It should be borne in mind that the policy is a group hospitalization plan. The categories of allowable medical services and supplies are specifically enumerated. However, paragraph (9), upon which the trial court necessarily relied, does not independently confer coverage. The scope of coverage is set forth by the previous paragraphs and subparagraphs whereas paragraph (9) merely refers to those categories of medical expenses and defines the manner and mode of payment as well as the division of payment between co-insurors. Compare Aetna Life Insurance Company v. Benjamin, 206 So.2d 444 (Fla. 1st DCA 1958) and Aetna Life Insurance Company v. Hare, 47 Ala.App. 478, 256 So.2d 904 (1972). Consequently, the trial court improvidently focused upon the alleged ambiguity between the master policy and the summary of the benefits in order to find coverage and assess liability against Aetna.
The summary final judgment in favor of the plaintiff is reversed. As stated, our disposition of this matter makes it unnecessary to pass upon the denial of the plaintiff’s requested attorney’s fees.
Reversed and remanded.